Case No. 15-14947-B
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

NORMA INES FEIJOO,
f/k/a NORMA BORROTO,


Appellant,


-vs.-


GEICO GENERAL INSURANCE COMPANY


Appellee.

---

On Appeal from the United States District Court for the
Southern District of Florida
LT CASE NO.: 1:14-CV-24659-KMM

---

GEICO GENERAL INSURANCE COMPANY'S ANSWER BRIEF

---

**B. RICHARD YOUNG**
Florida Bar No.: 442682
ryoung@flalawyer.net
**ADAM A. DUKE**
Florida Bar No.: 0055734
aduke@flalawyer.net
Young, Bill, Boles, Palmer & Duke, P.A.
P.O. Drawer 1070
Pensacola, FL 32591-1070
(850) 432-2222 / 432-1444 - facsimile
Attorneys for GEICO General Ins. Co.

*Feijoo v. GEICO*
CASE NO.: 15-14947-B

## <u>GEICO GENERAL INSURANCE COMPANY'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

In compliance with Local Rule 26.1-1, Appellant, GEICO GENERAL INSURANCE COMPANY ("GEICO"), certifies that the following is a complete list of all trial judge(s), attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, and includes subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1) Berkshire Hathaway, Inc. (BRK-A & BRK-B), owner of GEICO Corporation

2) Bill, Michael T., Esq., Counsel for GEICO

3) Degnan, Sharon, Esq.

4) The Honorable Judge Ronald D. Dresnick (Circuit Court Judge, in and for Miami- Dade County, Florida)

5) Duke, Adam A., Esq., Counsel for GEICO

6) Feijoo, Norma Ines, f/k/a Norma Borroto, Plaintiff/ Appellant

7) Garcia, Jose, Esq.

8) Garel, Arthur M., P.A., Underlying Counsel for Feijoo

*Feijoo v. GEICO*
CASE NO.: 15-14947-B

9)  Garel, Arthur M., Esq., Underlying Counsel for Feijoo

10) GEICO Advantage Insurance Company, GEICO's affiliate

11) GEICO Casualty Company, GEICO's affiliate

12) GEICO Choice Insurance Company, GEICO's affiliate

13) GEICO Corporation, parent company of GEICO

14) GEICO County Mutual Insurance Company, GEICO's affiliate

15) GEICO General Insurance Company, defendant/ appellant

16) GEICO Indemnity Company, GEICO's affiliate

17) GEICO Insurance Agency, Inc., GEICO's affiliate

18) GEICO Secure Insurance Company, GEICO's affiliate

19) Government Employees Insurance Company, GEICO's affiliate

20) Harrington, Timothy, W., Esq.

21) Hassebrock, Benjamin C., Esq.

22) The Honorable Judge Chris M. McAliely (Magistrate Judge, in and for the
    Southern District of Florida)

23) Marino, Jr., Stephen A., Esq., Counsel for Appellant Feijoo

24) Meiler, Michal, Esq., Counsel for Appellant Feijoo

25) The Honorable Judge K. Michael Moore (Chief United States District
    Judge, in and for the Southern District of Florida)

26) Morgan, Michel, A., Esq., Counsel for GEICO

27) Penta, Ryan, Esq., Underlying Counsel for Defendant Garcia

*Feijoo v. GEICO*
CASE NO.: 15-14947-B

28) Pincavage, Danya J., Esq., Counsel for Appellant Feijoo

29) Ryan, Jeffrey, Esq.

30) Thompson, Nicholas, Esq.

31) Weldy, Richard A., Esq., Counsel for GEICO

32) Ver Ploeg & Lumpkin, P.A. Counsel for Appellant Feijoo

33) Young, B. Richard, Esq., Counsel for GEICO

34) Young, Bill, Boles, Palmer & Duke, P.A., Counsel for GEICO

## STATEMENT REGARDING ORAL ARGUMENT

GEICO respectfully submits that oral argument is not necessary in the present case. GEICO believes that the record speaks for itself and that this Court will be able to reach its decision based upon the undisputed material facts in the record.

# **TABLE OF CONTENTS**

**Page**

GEICO'S Certificate of Interested Persons and Corporate

    Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .C 1 of 3

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-vi

Statement of Subject-Matter and Appellate Jurisdiction . . . . . . . . . . . . . . . . . .vii

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . .1

    I.     Nature of the case, course of the proceedings, and
            disposition in the court below . . . . . . . . . . . . . . . . . . . . . . . . . . . .1-2

    II.    Statement of Material Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-13

    III.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-18

          A. Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

          B. The Law of Bad Faith in Florida . . . . . . . . . . . . . . . . . . . . . . . 14-18

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Argument and Citations of Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-48

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

# TABLE OF CITATIONS

**Cases**                                                                        **Page**

*Allen v. Tyson Foods, Inc.*,
121 F. 3d 642 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Allstate Indem. Co. v. Ruiz*,
899 So. 2d 1121 (Fla. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Auto Mut. Indem. Co. v. Shaw*,
184 So. 852 (Fla. 1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 46

*Barry v. GEICO General Ins. Co.*,
938 So. 2d 613 (Fla. 4th DCA 2006). . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Bell v. GEICO Gen. Ins. Co.*,
489 Fed. Appx. 428 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Berges v. Infinity Ins. Co.*,
896 So. 2d 665 (Fla. 2004). . . . . . . . . . . . . . . . . . . .15, 16, 17, 18, 40, 47

*Boston Old Colony v. Gutierrez*,
386 So. 2d 783 (Fla. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . .15, 28, 32, 44

*Cadle v. GEICO General Ins. Co.*,
2014 WL 4983746 (M.D. Fla. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Campbell v. Gov't Employees Ins. Co.*,
306 So. 2d 525 (Fla. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16, 17, 43

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Cordoba v. Dillard's, Inc.*,
419 F.3d 1169 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Clauss v. Fortune Ins. Co.*,
    523 So. 2d 1177 (Fla. 5th DCA 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*DeLaune v. Liberty Mut. Ins. Co.*,
    314 So. 2d 601 (Fla. 4th DCA 1975). . . . . . . . . . . . . . . . . . . . . . . . .16, 17, 18

*Farinas v. Fla. Farm Bureau Gen. Ins. Co.*,
    850 So. 2d 555 (Fla. 4th DCA 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Francois v. Illinois Nat. Ins. Co.*,
    Case No. 01-CV-8070, 2002 WL 33760405 (S.D. Fla. Mar. 28, 2002). . . .46

*Hayas v. GEICO General Ins. Co.*,
    2014 WL 6883131 (M.D. Fla. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kincaid v. Allstate Property & Cas. Ins. Co.*,
    2014 WL 2048281 (S.D. Fla. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Macola v. Government Employees Ins. Co.*,
    953 So. 2d 451 (Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Maldonado v. Liberty Ins. Corp.*
    546 F.Supp.2d 1347 (S.D. Fla. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 34, 44

*Meisler v. Gannett Co., Inc.*,
    12 F. 3d 1026 (11th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Messinese v. USAA Cas. Ins. Co.*,
    2015 WL 4619808 (11th Cir. Aug. 4, 2015). . . . . . . . . . . . . . . 15, 17, 43, 45

*Miami Battery Mfg. Co. v. Boston Old Colony Ins. Co.*,
    1999 WL 34583205 (S.D. Fla. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Moore v. GEICO Gen. Ins. Co.*,
    No. 14-13356, 2016 WL 736824 (11th Cir. Feb. 19, 2016). . . . . . . . . . 41, 47

*Mullins v. Crowell*,
    228 F. 3d 1305 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Novoa v. GEICO Indemnity Co.*,
542 Fed. Appx. 794 (11th Cir. 2013). . . . . . . . . . . . . . . . . . . . . 15, 42, 43, 45

*Odom v. Canal Ins. Co.*,
582 So. 2d 1203 (Fla. 1st DCA 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Perera v. U.S. Fidelity and Guar. Co.*,
35 So. 3d 893 (Fla. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Powell v. Prudential Prop. & Cas. Ins. Co.*,
584 So. 2d 12 (Fla. 3d DCA 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*,
94 So. 3d 541 (Fla. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*State Farm Mut. Auto Ins. Co. v. LaForet*,
658 So. 2d 55 (Fla. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 43, 44, 45

*Snowden v. Mutual Casualty Co.*,
358 F. Supp. 2d 1125 (N.D. Fla. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tanaka v. GEICO General Ins. Co.*,
2013 WL 3323242 (M.D. Fla. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Taylor v. GEICO Indem. Co.*,
No. 8:12-cv-2448-T-AEP, 2015 WL 6750821 (M.D. Fla. Nov. 5, 2015). . 30

*Walker v. Darby*,
911 F. 2d 1573 (11th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Wiggins v. Allstate Property ad Cas. Ins. Co.*,
2015 WL 1401967 (S.D. Fla. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Williams v. Infinity Ins. Co.*,
745 So. 2d 573 (Fla. 5th DCA 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **Federal Statutes**

28 U.S.C. § 1291 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

28 U.S.C. § 1332 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

## **Federal Rules**

Fed.R.Civ.P.56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

## **Other Authorities**

Rule 4-1.4, Florida Rules of Professional Conduct. . . . . . . . . . . . . . . . . . . . . . . 33

Fla. Admin. Code. R. 69O-175.001(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## Statement of Subject-Matter and Appellate Jurisdiction

The United States District Court for the Southern District of Florida properly exercised jurisdiction over the action filed by NORMA INES FEIJOO ("FEIJOO") against GEICO GENERAL INSURANCE COMPANY ("GEICO"), Case Number 1:14-CV-24659-KMM, pursuant to 28 U.S.C. § 1332 because there was complete diversity of citizenship between the plaintiff and the defendant, and because the amount in controversy exceeded $75,000.00.

This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1291, "Final Decisions of District Courts," because the district court entered final judgment in GEICO's favor on September 30, 2015. [*See* D.E. 113][1]. FEIJOO filed her Notice of Appeal on October 30, 2015, which was within thirty days of the date on which the district court entered its Order Granting GEICO's Motion for Summary Judgment. [*See* D.E. 116].

---

[1] References to the Record will be designated by Docket entry in the district court as "[D.E. _____, (page, line, or paragraph)]." Where the document is a deposition transcript, the citation appears in the form of [page number];[line number].

## STATEMENT OF THE ISSUES

The issue presented in this appeal is whether the trial court properly determined that no reasonable jury could find that GEICO handled the claims brought by NORMA INES FEIJOO against Jose Garcia arising out of the January 6, 2008 automobile accident in bad faith, as a matter of law.

## STATEMENT OF THE CASE AND FACTS

### I.    Nature of the case, course of the proceedings, and disposition in the court below

On November 20, 2014, Appellant, NORMA FEIJOO ("FEIJOO") filed the instant bad faith action against GEICO GENERAL INSURANCE COMPANY ("GEICO") in the Circuit Court of the 11th Judicial Circuit in and for Miami Dade County Florida, alleging that GEICO acted in bad faith in handling her bodily injury claim against GEICO's insured, Jose Garcia ("Garcia"). [*See* D.E. 1-1]. GEICO subsequently removed the case to federal court on the basis of diversity jurisdiction. [*See* D.E. 1].

On July 17, 2015, GEICO moved for summary judgment. [*See* D.E. 50]. GEICO argued that no reasonable jury could find that GEICO acted in bad faith in the handling of FEIJOO's claim against Garcia because GEICO quickly responded and appropriately investigated the claim, keeping Garcia informed at all times. [*See id.*]. FEIJOO responded to GEICO's Motion for Summary Judgment on August 19, 2015, arguing that GEICO could and should have accepted FEIJOO's settlement

demands, and that GEICO's handling of FEIJOO's claim was focused on decreasing the Average Loss Payments ("ALP") and increasing GEICO's profit-based bonuses. On September 30, 2015, after reviewing the record and the pleadings before the court, Chief Judge of the United States District Court for the Southern District, K. Michael Moore, concluded that no reasonable juror could infer that GEICO acted in bad faith as a matter of law. [*See* D.E. 113]. Therefore, the district court granted GEICO's motion for summary judgment, and judgment was entered in favor of GEICO. [*See id*.]. On October 13, 2015, FEIJOO filed a Motion for Reconsideration, asking the district court to re-evaluate its decision in granting GEICO's Motion for Summary Judgment. [D.E. 114]. On October 30, 2015, FEIJOO filed the instant appeal with this Court. [D.E. 116]. The proceedings were stayed pending the district court's determination of FEIJOO's Motion for Reconsideration. On January 19, 2016, the district court issued an order denying FEIJOO's Motion for Reconsideration. [D.E. 124].

## II.    Statement of the Material Facts

### The Underlying Action

GEICO General Insurance Company issued policy number 0107801201 ("the Policy") to Teresa Garcia and Jose Garcia ("Garcia"). [*See* D.E. 51-1]. The policy period was effective January 1, 2008 to April 9, 2008, and provided Bodily

Injury ("BI") liability limits in the amount of $25,000.00 per person and $50,000.00 per occurrence. [*See* D.E. 51-1].

On January 6, 2008, Garcia was traveling northbound on SW 67th Avenue in Miami, Florida. [*See* D.E. 51-2]. As Garcia approached the intersection of 23rd street, he rear-ended a vehicle driven by Luis Borroto. [*See id.*] FEIJOO was a passenger in Mr. Borroto's vehicle. [*See id.*]. FEIJOO declined transport to the ER from the scene of the accident and advised Garcia that she was not hurt. [*See id*; D.E. 51-15 at p.7]. That same day, Garcia's son (Jose Jr.), reported the loss to GEICO, and GEICO opened a claim, beginning its investigation. [*See* D.E. 51-3 at p. 35].

On January 10, 2008, FEIJOO underwent X-rays of the cervical, lumbar, and dorsal spine at Colado's Radiology Group, which indicated osteoporosis and mild degenerative changes, including marked disc space narrowing. [*See* D.E. 51-4]. That same day, GEICO received an estimate for $809.88 to repair the damage to FEIJOO's vehicle and received information confirming that the accident involved minor impact, with no glass damaged and no air-bag deployment. [*See* D.E. 51-5].

On January 29, 2008, GEICO learned that FEIJOO was treating at Fast Rehabilitation Center under the care of Dr. Ralph Miniet. [*See* D.E. 51-3 at p. 32]. From February 2008 to April 2009, GEICO sent letters to Teresa Garcia advising that FEIJOO was still treating for injuries stemming from the accident. [*See id.* at

p. 29-30]. GEICO advised Ms. Garcia that they would continue to keep her informed of the claim status.

On June 12, 2008, GEICO received a Letter of Representation ("LOR") from Attorney Nicholas Thompson of Reifkind & Thompson, P.A., advising that their office had been retained to represent FEIJOO in relation to the January 6, 2008 motor vehicle accident. [*See* D.E. 51-7]. On this same date, Mr. Thompson's office advised GEICO that they had no treatment information for FEIJOO. [*See* D.E. 51-3 at p. 28]. Upon receiving the LOR from Mr. Thompson, GEICO forwarded a certified copy of the policy to him and advised that the Affidavit of Coverage would be sent under separate cover. [*See* D.E. 51-8].

On July 30, 2008, Garcia contacted GEICO regarding FEIJOO's treatment status. [*See* D.E. 51-3 at 26]. Garcia was informed FEIJOO was still receiving treatment and that GEICO would keep him updated. [*See id.*]

GEICO sent Mr. Thompson multiple letters, beginning in January 2009 through July 2009, requesting the medical records and documentation relating to FEIJOO's bodily injuries so that GEICO could evaluate FEIJOO's claim. [*See* D.E. 51-9]. At every attempt, GEICO was informed that FEIJOO was still treating and that Mr. Thompson was still in the process of gathering medical records. [*See* D.E. 51-3 at p. 26].

On November 10, 2008, GEICO contacted Mr. Thompson regarding the status of FEIJOO's medical records; GEICO was informed that FEIJOO had finished treatment and that Mr. Thompson was preparing the medical records and information for a demand. [*See id.*] On December 19, 2008, January 10, 2009, February 10, 2009, March 5, 2009, April 1, 2009, May 1, 2009, May 31, 2009, and July 5, 2009, GEICO contacted Mr. Thompson's office to get FEIJOO's treatment status, request a PIP log, and find out when a demand could be expected. [*See id.* at pp. 24-26].

On August 31, 2009, Mr. Thompson sent a policy limit demand to GEICO on behalf of FEIJOO, demanding tender of Garcia's $25,000 policy limits by September 28, 2009. [*See* D.E. 51-10]. The letter enclosed a copy of the police report, and a complete set of FEIJOO's medical records including records from Fast Rehabilitation Center Inc., x-ray, MRI reports, and the opinion of Doctor Schapiro. [*Id.*]. The MRI from Stand-Up MRI of Miami revealed spinal stenosis and minimal disc narrowing throughout the cervical spine, as well as the presence of disc osteophytes, all of which indicated a degenerative disc condition. [*See* D.E. 51-10 at pp. 16-22]. Notwithstanding Dr. Schapiro's conclusion that FEIJOO sustained a 10% physical impairment, this conclusion and impairment was based on FEIJOO's x-ray and MRI films, which indicated that FEIJOO's condition was degenerative. [*See Id.* at pp. 5-11]. Specifically, Dr. Schapiro noted that the

cervical spine x-rays showed "moderate spondylosis" with "decreased disc height", and the lumbar x-ray revealed "osteopenia consistent with her age." [*See id.* at p. 10].

Dr. Schapiro recommended that FEIJOO undergo ESI treatment, but she decided not to proceed with this type of care. [*See Id.* at p. 6]. Additionally, Dr. Schapiro's report stated that FEIJOO may possibly need a discectomy in the future if her injuries did not improve, but FEIJOO decided to return to him only on an as needed basis. [*See Id.* at p. 7]. The demand also included records from Dr. Miniet of Fast Rehabilitation Center, who FEIJOO treated with from January 10, 2008, through March 21, 2008. [*See* D.E. 51-11]. Dr. Miniet diagnosed FEIJOO with a cervical sprain/strain, thoracic sprain/strain and a lumbar sprain/strain, and assigned FEIJOO a permanent impairment rating of 5% as to the whole body. [*See* D.E. 51-11]. Lastly, Mr. Thompson's letter claimed that FEIJOO's medical expenses totaled approximately $17,713.00. [*See* D.E. 51-10 at p. 3]. However, the medical records revealed that $13,073.00 of this amount was for FEIJOO's short period of chiropractic treatment at Fast Rehabilitation Center, from January 10, 2008, through March 21, 2008. [*See* D.E. 51-11 at pp. 36-39].

On September 9, 2009, GEICO sent correspondence to Garcia regarding the status of FEIJOO's claim. [*See* D.E. 51-12]. GEICO informed Garcia that FEIJOO's claim had the potential to exceed the policy limits. [*See id*.] GEICO

ensured Garcia that it would attempt to effect a settlement within the policy limits, however, if such was not possible, GEICO warned Garcia of the possibility of an excess judgment and that he would be responsible for any judgment in excess of the policy limits. [*See id.*]. Garcia was also informed of his right to contribute to settlement and his right to retain independent counsel if he wished to do so. [*See id*.]. Additionally, the letter enclosed a copy of FEIJOO's August 31, 2009 demand letter. [*See id*.].

On September 28, 2009, GEICO responded to FEIJOO's demand. [*See* D.E. 51-13]. GEICO offered $3,483.00 to settle FEIJOO's claim in light of the minor rear-end impact with very little damage to FEIJOO's vehicle, which GEICO noted was not the type of impact that would result in FEIJOO's degenerative MRI findings. [*See id*.]. Further, GEICO expressed concerns regarding FEIJOO's actual out of pocket expenses relative to her short period of chiropractic treatment, which amounted to over $13,000 for three (3) months of treatment, and the fact that FEIJOO did not seek any further treatment until fifteen (15) months later when she visited Dr. Schapiro. [*See id*.]. As a result, GEICO offered FEIJOO $3,434 as settlement for her bodily injury claim. [*See id*.].

Approximately one month after GEICO sent a response to the demand letter, Mr. Thompson contacted GEICO and informed GEICO that FEIJOO was not yet ready to discuss her claim. [*See* D.E. 51-3 at p. 19]. On December 4, 2009, Mr.

Thompson informed GEICO that FEIJOO was not interested in accepting the settlement offer but he would call back. [*See id.* at p. 21].

On February 1, 2010, Garcia informed GEICO that a lawsuit had been filed against him in state court by Mr. Thompson on behalf of FEIJOO. [*See id.*]. On February 3, 2010, GEICO sent a letter to Garcia to inform him that GEICO had retained the law office of Timothy Harrington to provide a defense against FEIJOO's lawsuit. [*See* D.E. 51-15]. GEICO also informed Garcia that he had the right to retain his own attorney to protect his personal interests in excess of the policy limits. [*See id.*].

On September 14, 2010, FEIJOO provided deposition testimony, wherein she acknowledged that she did not feel pain following the accident, and after having her blood pressure taken, she had refused any further medical treatment because she "did not believe that is was necessary." [*See* D.E. 51-17 at 21:18-23]. Additionally, FEIJOO testified that initially she only sought treatment from a clinic where her treatment consisted only of massages and hot and cold compresses. [*See id.* at 24:22-25; 25:1-3]. After about three months of treatment at the clinic, FEIJOO confirmed that she sought treatment from Dr. Schapiro, whom she saw two or three times. [*See id.* at 26:4-8]. FEIJOO also testified that she absolutely would not have surgery. [*See id.* at 26:22-25; 27:1-2]. FEIJOO further testified that Dr. Schapiro was the last physician she received treatment from following the

accident, and she had no plan to receive any future medical treatment for any injuries related to the subject accident. [*See id*. at 27:5-13].

On November 12, 2010, Mr. Garel, underlying counsel for FEIJOO, sent correspondence to Mr. Penta, counsel for Garcia, asserting that there was no evidence that FEIJOO's injuries existed prior to the accident and that after FEIJOO underwent spinal surgery, her medical bills would likely be in excess of $40,000.00. [*See* D.E. 51-18]. Mr. Garel proposed to settle FEIJOO's claim for $12,500.00. [*See* D.E. 51-19]. On November 17, 2010, Mr. Penta forwarded the above information to Garcia, advising Garcia of the amount of the settlement offer and that GEICO had thirty (30) days to accept the offer. [*See* D.E. 51-20].

On January 4, 2011, GEICO requested that Mr. Penta send FEIJOO's MRI films to be re-read and to confirm that FEIJOO was scheduled for an IME on January 28, 2011. [*See* D.E. 51-3 at p. 8].

On January 18, 2011, Dr. Kevin Abrams sent Mr. Penta a report of his findings from his review of FEIJOO's MRI films, confirming that FEIJOO's MRI films showed conditions that were degenerative in nature. [*See* D.E. 51-21]. Specifically, in his report, Dr. Abrams opined that there were degenerative end plate signal changes at C3-4, C4-5, C5-6, and C6-7, including disc dessication and disc space narrowing at C3-4 and C4-5. [*See id*.]. Dr. Abrams also noted

degenerative changes of the lumbar spine with minimal disc bulges without herniation, spinal stenosis or neural foraminal encroachment. [*See id*.].

Around January 19, 2011, GEICO authorized Mr. Penta to file a Proposal for Settlement in the amount of $5,125 on behalf of Garcia. [*See* D.E. 51-22].

On March 1, 2011, Mr. Penta received the results from the IME conducted by Dr. Jay Stein, wherein Dr. Stein concluded that FEIJOO's injuries were chronic, degenerative, pre-existing and unrelated to the accident. [*See* D.E. 51-23]. Dr. Stein concluded that FEIJOO did not sustain a permanent injury as a result of the January 6, 2008 motor vehicle accident. [*See id.*]. Dr. Stein additionally reported that FEIJOO's medical treatment appeared to be excessive and unnecessary, and that FEIJOO's treatment with Dr. Schapiro in 2009 was unnecessary and unrelated to the accident. [*See id*.].

On April 6, 2011, FEIJOO's counsel sent correspondence to Mr. Penta proposing a settlement of FEIJOO's claim for the policy limits of $25,000.00. [*See* D.E. 51-25]. The settlement proposal expired and the trial commenced.

During trial, FEIJOO testified that she had changed her position on having surgery, and would now undergo a procedure on her back. FEIJOO testified in pertinent part, as follows:

> Q : I know originally you didn't want to have surgery. Will you do it now?

FEIJOO:        Yes.

[*See* D.E. 51-26 at 218:15-17]

> Q:            Do you remember me asking you, so you refused surgery, and you're responding I'm too old to get surgery?
>
> FEIJOO:        Yes, I said that, that I was too old to have surgery and that I was very afraid.
>
> Q:            Do you remember me also asking you: So you have no plans on getting surgery? Your response was: No. Do you remember that question and follow-up answer?
>
> FEIJOO:        No, I had not planned on it, because besides not having the money, I'm very afraid.

[*See* D.E. 51-26 at 243:22-25; 244:1-6]

On April 13, 2011, the state court jury returned a verdict in favor of FEIJOO, awarding a total of $105,300.00, with $60,300.00 allocated for future medical expenses, $30,000.00 for future pain and suffering, and $15,000.00 for past pain and suffering. [*See* D.E. 51-27]. On April 25, 2011, Final Judgment was entered for the sum of $105,300. [See D.E. 51-28]. After a final judgment was entered, Garcia assigned his right to proceed in a bad faith action against GEICO, to FEIJOO.

**The Bad Faith Claim**

On November 20, 2014, FEIJOO filed a complaint in state court setting forth allegations of bad faith against GEICO. [*See* D.E. 1-1]. GEICO removed the matter to federal court. [*See* D.E. 1]. On July 17, 2015, GEICO moved for summary judgment, as no reasonable jury could find that it handled FEIJOO's claim against Garcia in bad faith. [*See* D.E. 50]. As GEICO explained, the present case amounts to nothing more than a disagreement over the value of FEIJOO's claim. [*See id*.]. In response, FEIJOO speculated that GEICO's employees demonstrated bad faith by focusing on decreasing Average Loss Payments and increasing their profit-based bonus rather than protecting the rights of their insured. [*See* D.E. 77]. Contrary to the undisputed facts of this case, FEIJOO alleged that GEICO rejected valid medical evidence, undervalued her claim, and ignored multiple settlement opportunities, ostensibly resulting in a genuine issue of material fact as to whether GEICO's allegedly "self-serving and profit-driven" decisions caused a failure to settle her claim. [*See id*.]

On September 30, 2015, the United States District Court for the Southern District of Florida found that no rational trier of fact could find that GEICO acted in bad faith in handling FEIJOO's claim against Garcia and, therefore, granted Summary Judgment in GEICO's favor. [*See* D.E. 113]. On October 13, 2015, FEIJOO sought reconsideration of the district court's *Order Granting GEICO's*

*Motion for Summary Judgment*. [*See* D.E. 114]. On October 30, 2015, FEIJOO appealed the district court's entry of summary judgment to the Eleventh Circuit Court of Appeals. [*See* D.E. 116]. On January 19, 2016, the district court found that FEIJOO's *Motion for Reconsideration* "simply rehashe[d]" arguments previously made, and therefore, the district court denied reconsideration. [*See* D.E. 124].

## III.    STANDARD OF REVIEW

### A. Summary Judgment

An appellate court reviews de novo, the district court's grant of summary judgment, applying the same legal standards as the court below. *See Meisler v. Gannett Co., Inc*., 12 F. 3d 1026, 1029 (11th Cir. 1994); *see also Bell v. GEICO Gen. Ins. Co*., 489 Fed. Appx. 428, 431 (11th Cir. 2012).

Summary judgment **shall** be granted ". . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." *Mullins v. Crowell*, 228 F. 3d 1305, 1313 (11th Cir. 2000). Once the moving party has satisfied its burden, the burden shifts to the nonmoving party, who must show "that summary judgment would be inappropriate because there

exists a material issue of fact." *Id.* "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F. 3d 642, 646 (11th Cir. 1997) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of material fact is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* (citations omitted). "A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment." *Hayas v. GEICO General Ins. Co.*, 2014 WL 6883131, * 3 (M.D. Fla. 2014) (*citing Anderson*, 477 U.S. at 247-248).

Summary judgment for the moving party should be granted when the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 252).

## B. The Law of Bad Faith in Florida

Florida common law provides that insurers owe "a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement," which

is known as the duty of "good faith." *State Farm Mut. Auto Ins. Co. v. LaForet*, 658 So. 2d 55, 58 (Fla. 1995); *see also Macola v. Government Employees Ins. Co.,* 953 So. 2d 451 (Fla. 2006). An insurer is not required to handle claims "perfectly, prudently or even reasonably." *Novoa v. GEICO Indemnity Co.*, 542 Fed. Appx. 794, 796 (11th Cir. 2013); *Messinese v. USAA Cas. Ins. Co*., 2015 WL 4619808 (11th Cir. Aug. 4, 2015). The duty of good faith obligates an insurer to handle claims brought against its insureds with "the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Boston Old Colony v. Gutierrez*, 386 So. 2d 783 (Fla. 1980) (citing *Auto Mut. Indem. Co. v. Shaw*, 184 So. 852 (Fla. 1938)); *see also Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So. 2d 555, 559 (Fla. 4th DCA 2003); *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 668-669 (Fla. 2004); *Clauss v. Fortune Ins. Co.*, 523 So. 2d 1177, 1178 (Fla. 5th DCA 1988).

*Boston Old Colony* enumerates an insurer's duties to an insured, stating in pertinent part:

> "This good faith duty obligates the insurer to advise the insureds of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of excess judgment and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so."

*Gutierrez*, 386 So. 2d at 785 (internal citations omitted). The duty of good faith further obligates the insurer to initiate settlement negotiations in those instances where liability is clear and the damages sustained by the claimant are so severe that an excess judgment would likely occur. *See Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). A breach of this duty by an insurer which causes the entry of a judgment against its insureds in excess of the applicable policy limits gives rise to a claim for "bad faith." *See Gutierrez*, 386 So. 2d at 785; *see also Farinas*, 850 So. 2d at 559. An insurer may be held liable for an excess judgment against its insured if, and only if, it has been found to have breached its duty of good faith to its insured. *See Campbell v. Gov't Employees Ins. Co.*, 306 So. 2d 525, 530-531 (Fla. 1974). Ordinary negligence will not give rise to recovery for a claim of bad faith. *See Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 694 (Fla. 2004).

Furthermore, it is well established in Florida law that bad faith is more than mere negligence. *See Campbell*, 306 So. 2d at 530-531 (stating, "In *Auto Mutual Indemnity Co. v. Shaw*, *supra*, we aligned Florida with those states whose standards for determining liability in an excess judgment case is bad faith rather than negligence."); *see also  DeLaune v.  Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla. 4th DCA 1975). While negligence is a factor that the court may consider when determining whether an insurer acted in bad faith, an insurer who is

negligent in handling a claim, but whose actions do not rise to the level of bad faith, cannot be held liable for an excess judgment. *See Gutierrez*, 386 So. 2d at 785; *Campbell*, 306 So. 2d at 530-531; *DeLaune*, 314 So. 2d at 603. Evidence or argument regarding improvements to claims handling process does not rise to the level of bad faith. *Messinese*, 2015 WL 4619808. In short, to prove that an insurer acted in bad faith, the bad faith claimant must show behavior on the part of the insurer that amounts to more than negligence. *See id.; Campbell,* 306 So. 2d at 530-531; *DeLaune,* 314 So. 2d at 603.

The factors which courts should consider when determining whether, under the totality of the circumstances, an insurer acted in bad faith will differ depending on the facts of each case. *See Berges*, 896 So. 2d at 680; *Williams v. Infinity Ins. Co.*, 745 So. 2d 573 (Fla. 5th DCA 1999) (a factor considered by the court was whether the offer to settle made to the insurer would have protected the insured); *Powell*, 584 So. 2d at 14 (a factor that may be considered is whether there was "no realistic possibility of settlement within the policy limits"). There is no comprehensive list of factors that courts must weigh when determining whether an insurer acted in bad faith; the criteria that are relevant will differ based on the facts of each individual case.

While Florida law provides that the focus of a claim for bad faith should be on the conduct of the insurer, rather than the conduct of the claimant, the

claimant's unwillingness to settle a claim is relevant to whether the insurer acted in bad faith under a totality of the circumstances. *See Berges*, 896 So. 2d at 677; *see also Barry v. GEICO General Ins. Co.*, 938 So. 2d 613 (Fla. 4th DCA 2006) (holding that the conduct of the underlying claimant's attorney is relevant to an insurer's defense that there was no realistic opportunity to settle, and that introduction of such evidence was appropriate.); *see also DeLaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla 4th DCA 1975); *see also Snowden v. Mutual Casualty Co.*, 358 F. Supp. 2d 1125, 1129 (N.D. Fla. 2003).

## SUMMARY OF THE ARGUMENT

Florida law imposes upon insurers the duty to refrain from acting solely in their own interest in handling claims brought against their insureds. This duty does not require that insurers handle claims perfectly. An insurer cannot be held liable for a judgment against its insured that exceeds the contracted-for policy limits unless the insurer is found to have acted in bad faith, and the bad faith conduct is causally related to the excess judgment. Summary judgment is appropriately entered for an insurer in a bad faith action where no reasonable jury could find that the insurer acted in bad faith. The present matter is just such a case.

The district court properly entered summary judgment in favor of GEICO in the bad faith action brought by NORMA FEIJOO against GEICO. The undisputed facts demonstrate that GEICO quickly responded and appropriately investigated

FEIJOO's claim following the January 6, 2008 accident. GEICO kept Garcia advised of his rights and informed of FEIJOO's medical treatment status and settlement demands at all times. Furthermore, GEICO fairly evaluated FEIJOO's bodily injury claim and diligently pursued a reasonable settlement of the claim.

## ARGUMENT AND CITATIONS OF AUTHORITY

**A. GEICO fairly evaluated FEIJOO's claim and engaged in reasonable settlement negotiations.**

FEIJOO contends that the district court's Order granting summary judgment should be reversed because GEICO "failed to fairly evaluate Feijoo's damages" in making counteroffers in response to FEIJOO's demands. [*See* Brief of Appellant at 19]. However, even when considered in a light most favorable to FEIJOO, the evidence clearly demonstrates that GEICO timely investigated FEIJOO's claim, fairly and accurately assessed the value of FEIJOO's claim, and GEICO made diligent efforts to settle FEIJOO's claim for a reasonable amount. Thus, the district court correctly determined from the "undisputed record that at all times GEICO was attempting to settle the claims against Garcia quickly and completely while undergoing a reasonable investigation of Feijoo's claim." [*See* D.E. 113 at p. 12].

In promptly initiating its investigation of FEIJOO's claim, GEICO sent FEIJOO's attorney, Mr. Thompson, multiple letters from January 2009 through July 2009, requesting the medical records and documentation relating to FEIJOO's bodily injuries so that GEICO could evaluate FEIJOO's claim. [*See* D.E. 51-9].

Upon receiving FEIJOO's initial demand on August 31, 2009, GEICO learned that FEIJOO did not seek treatment until approximately four (4) days after the accident, and once she was assessed at maximum medical improvement after three (3) months of chiropractic treatment, FEIJOO did not seek any additional medical care or treatment for approximately fifteen (15) months. [*See* D.E. 51-10 at pp. 5-11]. Although FEIJOO alleged that she was assessed with a 5% permanent impairment after concluding chiropractic treatment in March 2008, the x-ray findings provided in the initial demand indicated that her injuries were degenerative in nature, and thus unrelated to the subject accident. [*See* D.E. 51-4]. Furthermore, although Dr. Schapiro assessed FEIJOO's impairment rating at 10%, this assessment was undermined by the clearly degenerative findings in FEIJOO's MRI, as well as the relatively minor nature of the accident. [*See* D.E. 51-10 at pp. 16-22; D.E. 51-2; D.E. 51-5]. Although Dr. Schapiro recommended that FEIJOO undergo epidural steroid injections, FEIJOO decided against this treatment and later confirmed that she never underwent epidural steroid injections. [*See* D.E. 51-10 at p. 6; D.E. 50-1 at 41:11-17]. Dr. Schapiro opined that FEIJOO may need various types of future treatment, including the possibility of surgery; however, there was no surgical recommendation included in the August 31, 2009 demand packet. [*See* D.E. 51-10 at p. 7]. Ultimately, FEIJOO rejected even conservative

care, and Dr. Schapiro's notes indicated that FEIJOO concluded that she would return on an as needed basis. [*See id.*].

In summation, the August 31, 2009 demand letter consisted of an x-ray and an MRI which indicated that FEIJOO's injuries were degenerative in nature and not related to the relatively minor motor vehicle accident, which resulted in only $809.88 in damage to FEIJOO's vehicle. [*See* D.E. 51-10 at pp. 16-22; D.E. 51-4; D.E. 51-5]. The medical records provided in the August 31, 2009 demand, along with minor nature of the accident and the conservative course of treatment following the accident did not support an objective finding that FEIJOO had sustained a permanent injury as a result of the accident. The law is clear that when an insurer is investigating permanency "at the time of claim evaluation" ... the primary issue is "whether the insurer has enough information to determine that a claimant sustained a permanent injury within a reasonable degree of medical probability". *Wiggins v. Allstate Property ad Cas. Ins. C*o., 2015 WL 1401967 at *6 (S.D. Fla. 1995). Until the point where such a determination can be made, the claimant is only entitled to economic damages. *See id*.; *Cadle v. GEICO General Ins. Co*., 2014 WL 4983746 at *3 (M.D. Fla. 2014). Because the facially degenerative findings in FEIJOO's x-ray and MRI could not support a finding of permanency within a reasonable degree of medical probability, GEICO's claims adjuster, Sheila McGee assessed FEIJOO's claim and made a counteroffer

reasonably calculated to cover FEIJOO's economic expenses. Specifically, Ms. McGee used her claims handling training and experience to determine that FEIJOO's medical bills were inflated, particularly her chiropractic bills which amounted to over $13,000 for only three (3) months of treatment. Ms. McGee specifically addressed these concerns in her response to the August 31, 2009 policy limit demand, wherein she offered $3,484 to resolve FEIJOO's claim and asked Mr. Thompson to contact her for final resolution of the claim. [*See* D.E. 51-13].

Because GEICO's evaluation of FEIJOO's claim did not support a finding of permanency within a reasonable degree of medical probability, GEICO's offer of $3,484 to settle FEIJOO's claim was reasonably calculated to cover FEIJOO's medical expenses. Indeed, the accuracy of GEICO's assessment and the reasonableness of GEICO's offer were supported by the fact that FEIJOO did not actually incur any out of pocket expenses for her treatment associated with the subject accident, because her providers reduced the inflated medical bills and accepted PIP payments to cover the entirety of those expenses. [*See* D.E. 51-17 at 27:17-19]. Thus, FEIJOO's assertion that the medical records provided "supported damages exceeding $52,000" is irrelevant to whether GEICO evaluated FEIJOO's claim in good faith, as the record evidence demonstrates that this was an inflated and speculative alleged expense. [*See* Appellant's Brief at pp. 20-21]. Additionally, GEICO's assessment that FEIJOO was only entitled to economic

damages because FEIJOO did not sustain a permanent injury as a result of the January 6, 2008 motor vehicle accident was also ultimately confirmed by the opinions of two medical experts retained by GEICO. Specifically, Dr. Stein's IME report on FEIJOO confirmed that FEIJOO did not sustain a permanent anatomic orthopedic impairment in the January 6, 2008 motor vehicle accident, and Dr. Abrams re-read of FEIJOO's MRI film likewise confirmed that FEIJOO's spinal condition was the result of degenerative changes unrelated to the subject accident. [*See* D.E. 51-21; D.E. 51-23]. The undisputed evidence demonstrates that FEIJOO had zero economic damages, and she was not entitled to non-economic damages since the medical documentation provided in the demand did not support a finding of permanency for her alleged injuries. Therefore, any reasonable jury would find that GEICO's offer of $3,484 to settle FEIJOO's claim response to the August 31, 2009 demand was fair and reasonable.

FEIJOO's November 12, 2010 proposal for settlement in the amount of $12,500 was not accompanied with any further medical documentation supporting her claim. [*See* D.E. 51-19]. Further, FEIJOO had previously asserted during her September 14, 2010 deposition that she would absolutely not undergo surgery, and that she had no plan to receive any future medical treatment for any injuries related to the accident. [*See* D.E. 51-17 at 26:19-25; 27:1-13]. FEIJOO also admitted during her deposition that she had incurred no out of pocket expenses as a result of

the accident. [*See id.* at 27:17-19]. Notwithstanding all of the foregoing, GEICO increased its counteroffer to $5,125 in a good faith effort to settle FEIJOO's claim and protect its insured. [*See* 51-22]. Considering that FEIJOO failed to provide any documentation that could dispute the degenerative findings in the x-ray and MRI provided in the original demand, and considering that FEIJOO admitted that she had not incurred out of pocket expenses and did not intend to undergo surgery or seek any further treatment, no reasonable jury could find that GEICO acted in bad faith by increasing its offer in an attempt to settle FEIJOO's bodily injury claim.

In diligently continuing its investigation of FEIJOO's claim, GEICO retained board certified doctors in the fields of orthopedic surgery and radiology to review FEIJOO's medical records and films. Notwithstanding FEIJOO's attempts to discredit Dr. Stein and Dr. Abram and their opinions, both physicians unequivocally confirmed that FEIJOO's condition was degenerative and not causally related to the January 6, 2008 motor vehicle accident. [*See* D.E. 51-21; D.E. 51-23]. Specifically, upon his re-read of FEIJOO's MRI film, Dr. Abrams confirmed GEICO's assessment that the MRI revealed only degenerative changes throughout the cervical and lumbar spine, which could not be attributed to the January 6, 2008 motor vehicle accident. [*See* D.E. 51-21]. Additionally, Dr. Stein's IME of FEIJOO confirmed that FEIJOO did not sustain a permanent impairment as a result of the January 6, 2008 motor vehicle accident, and that FEIJOO's cervical

changes were chronic, degenerative, and un-related to the accident. [*See* D.E. 51-23]. Dr. Stein's opinion also confirmed GEICO's assessment that FEIJOO's treatment and the cost of the treatment from Fast Rehabilitation Center were excessive and unnecessary. [*See id.*]. The independent physicians retained by GEICO also concluded that FEIJOO did not need any further medical care, which was consistent with and substantiated by FEIJOO's prior deposition testimony that she had no intention of seeking any future medical treatment. [*See* D.E. 51-17 at 27:10-13; D.E. 51-21; D.E. 51-23].

Notwithstanding the findings that FEIJOO's injuries were the result of a pre-existing degenerative condition that pre-dated the accident, FEIJOO's attorney, Mr. Garel, made request for the $25,000 policy limits on April 6, 2011, less than a week before trial. [*See* D.E. 51-25]. Thus, FEIJOO arbitrarily doubled the amount of her previous settlement demand despite the fact that the only new developments since FEIJOO's prior proposal for settlement were the medical reports of GEICO's physicians confirming that FEIJOO's condition was degenerative and unrelated to the subject motor vehicle accident. As the district court stated "[c]ommon sense dictates that based on the facts and evidence known to GEICO at the time of this 'eleventh hour' offer to settle, GEICO's decision to proceed to trial cannot be characterized as a bad faith handling of Feijoo's claim." [*See* D.E. 113 at p. 13]. The district court correctly found that no reasonable jury could conclude that

GEICO acted in bad faith by rejecting FEIJOO's April 6, 2011 proposal for settlement and proceeding to trial in light of the opinions of Dr. Stein and Dr. Abrams. [*See id.*].

FEIJOO's reference to the amount of the jury verdict in an attempt to discredit GEICO's evaluation of the claim and the opinions of GEICO's physicians is completely unavailing. As the record shows, FEIJOO testified at trial that she intended to proceed with spinal surgery, and this testimony was in direct contravention to the testimony offered during her deposition.[2] [*See* D.E. 51-26; D.E. 51-17 at 26:19-25; 27:1-2]. FEIJOO's change in testimony at trial clearly changed the value of her claim, and deprived GEICO of an opportunity to adjust its evaluation accordingly. Although FEIJOO's decision to proceed with surgery would not have affected GEICO's assessment of causation, it certainly would have made an impact on GEICO's evaluation of FEIJOO's potential economic damages. Thus, the jury's verdict, which was based on testimony and information that was contradictory to the information available to GEICO during its handling of FEIJOO's claim, cannot be argued as a basis to discredit GEICO's evaluation.

In summation, FEIJOO argues that summary judgment should not have been granted because "GEICO cannot prove as a matter of law that its decision to reject

---

[2] Although FEIJOO testified during the underlying trial that she did intend on undergoing spinal surgery, she later confirmed in her deposition for the instant case that she never ultimately underwent any spinal procedure. [*See* D.E. 50-1 44:8-15].

all three of Feijoo's settlement offers was reasonable and in good faith." [*See* Brief of Appellant at p. 33]. However, FEIJOO has failed to cite to any record evidence that could feasibly lead any reasonable jury to conclude that GEICO could and should have accepted any of FEIJOO's settlement demands. FEIJOO argues at length that "GEICO did not have any medical evidence or other credible basis to dispute GEICO's damages…" [*See* Brief of Appellant at p. 23]. However, FEIJOO fails to acknowledge that there was no objective evidence provided to support a finding that FEIJOO had sustained any permanent injury as a result of the accident. In fact, the medical records provided in FEIJOO's demand facially demonstrated that FEIJOO's spinal condition was degenerative and unrelated to the January 6, 2008 accident, which was later confirmed by Dr. Stein and Dr. Abrams. Moreover, FEIJOO's own testimony affirmed that she would not, and did not incur any alleged future medical costs because she did not plan to have, nor did she have, any future treatment or surgery. [*See* D.E. 51-17 at 26:22-25; 27:1-2; D.E. 51-26 at 218:15-17; 243:22-25; 244:1-9; D.E. 50-1 at 44:1-8]. Therefore, because the record evidence confirms that GEICO's evaluation of FEIJOO's claim was in fact fair and reasonable, and because GEICO engaged in good faith attempts to settle FEIJOO's claim based on its reasonable evaluation, the district court correctly concluded that no reasonable jury could find that GEICO acted in bad faith in its handling of FEIJOO's bodily injury claim.

**B.      GEICO fulfilled its good faith duty to communicate with its insured.**

FEIJOO's contentions over the sufficiency of GEICO's communications with its insured have no basis in Florida law and are inaccurate representations of the manner in which GEICO routinely advised Garcia of his rights and the status of FEIJOO's claim. GEICO upheld its duty to communicate with its insured pursuant to the obligations set forth under *Boston Old Colony v. Gutierrez*, 386 So. 2d 783 (Fla. 1980). Thus, the district court correctly determined that GEICO's communications with Garcia fell "well within the parameters of an insurer's good faith duty under Florida law." [D.E. 113 at p. 12].

In reference to the November 12, 2010 PFS, FEIJOO erroneously argues that "GEICO's failure to advise Garcia of this opportunity to settle and the amount he could contribute to avoid a potential excess judgment is a breach of its good faith duties under Florida law." [*See* Brief of Appellant at p. 35]. Without any supporting basis under Florida law, FEIJOO contends that GEICO should have notified Garcia of the opportunity to contribute $7,375 to bridge the gap between FEIJOO's PFS and GEICO's subsequent PFS in the amount of $5,125. However, an insurer's good faith duties to advise and communicate with its insureds are set forth under *Boston Old Colony v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). *Boston Old Colony* is devoid of any requirement that obligates an insurer to advise its insured that they may contribute funds to settle a demand that is within the

policy limits, and FEIJOO has failed to cite to any other authority that invokes such a duty under Florida law.

An insurer has an obligation to advise an insured of the possibility of an excess judgment and the right to contribute to a settlement amount in excess of the policy limits. Florida law does not consist of any obligation on the part of an insurer to advise an insured of every opportunity to contribute to settlement offers below the policy limits. Indeed, the absence of such a requirement under Florida law is consistent with the terms of standard liability insurance policies, like the GEICO policy at issue, which delegates complete control over the defense and settlement of claims within the policy limits to the insurer. [*See* D.E. 51-1]. By entering into an insurance contract, an insured provides the insurer the discretion and authority to handle the defense of claims. This is explicit in the terms of an insurance contract. Part of the insurer's right and authority to handle the defense of the claim includes the authority to negotiate settlements within those monetary limits defined by the policy. The obligation to advise the insured of the right to contribute to amounts in excess of the policy limits arises when a settlement offer **exceeds** the agreed and contracted limits of the policy, thus placing settlement negotiations outside the scope of the insurer's delegated settlement authority.

FEIJOO cites to a case from the Middle District for the misplaced proposition that failing to advise an insured of the opportunity to contribute to any

settlement is sufficient for a jury to infer bad faith. *Taylor v. GEICO Indem. Co.*, No. 8:12-cv-2448-T-AEP, 2015 WL 6750821 (M.D. Fla. Nov. 5, 2015). It should first be noted that the statement that the insurer should have advised the insurer "of the opportunity to contribute to any settlement" is a quote made by the plaintiff's expert witness during trial. *Id.* at *4. This self-serving statement made by a plaintiff's expert is not a representation of an insurer's good faith duties under Florida law, and there is no Florida law provided in the court's opinion that would support this notion.

Furthermore, FEIJOO combines two distinct sentences into one complete thought in order to insinuate meaning into the court's opinion that is not present from a plain reading of the case. [*See* Brief of Appellant at 25-26]. Contrary to FEIJOO's characterization, the court in *Taylor* did not state that the failure to advise an insured of an opportunity to contribute to settlement was sufficient for a jury to infer bad faith. Rather, the insurer in *Taylor* had allegedly failed to keep its insured updated and advised throughout the handling of the claim. *See id.* at *4. The court's statement that "[t]he foregoing alone is sufficient evidence for the jury to infer bad faith" was a reference to the court's detailed discussion regarding the sufficiency of the insurer's communications throughout the claim, notwithstanding the other aspects of the insurer's claim handling that the court found also supported the jury's verdict. *See id.*

In *Odom*, the court's decision to overturn summary judgment was based on an insurer's overall failure to communicate with its insured, including the failure to notify the insured of settlement offers received from the plaintiff and the failure to advise of the possibility of an excess judgment. *Odom v. Canal Ins. Co.*, 582 So. 2d 1203, 1205 (Fla. 1st DCA 1991). Thus, the court in *Odom* did not isolate and critique the sufficiency of one communication, or lack thereof, as FEIJOO has attempted to do. *See id.* Furthermore, nowhere in the court's opinion is there any discussion regarding whether the insured had any right to contribute to a settlement offer within the policy limits or whether the insured was deprived of an opportunity to settle, and FEIJOO's reliance on this case in that context is misplaced. Therefore, FEIJOO's argument that GEICO should have given Garcia the opportunity to contribute $7.375 "to bridge the gap" of a settlement demand within the policy limits finds no support under Florida law.

FEIJOO also argues that "GEICO pushed its insured to trial with the promise of a 'slam dunk' defense, and that GEICO failed to advise Mr. Garcia of "the probable outcome of litigation and the risk of an excess judgment. [*See* Brief of Appellant at p. 26]. As an initial point, the statement that GEICO "pushed its insured to trial" is a complete mischaracterization of the ultimate decision to go to trial in this matter, and this statement represents a lack of understanding of an insurer's basic contractual right to handle the defense of a claim.

As to GEICO's communications with Garcia, the record evidence reflects that GEICO sent numerous status update letters to Garcia throughout the claims handling process, and GEICO routinely sent correspondence informing Garcia regarding any new developments in the claim, advising him of his right to retain independent counsel and his right to contribute to settlement. [*See* D.E. 51-6; D.E. 51-12; D.E. 51-13; D.E. 51-15; D.E. 51-16]. Furthermore, there are clear examples on the record where GEICO advised Garcia of the possibility of an excess judgment, contrary to FEIJOO's baseless contention. [*See* D.E. 51-12; D.E. 51-15]. There is no material dispute that GEICO's communications with Garcia were sufficient to satisfy the duty to communicate pursuant to *Boston Old Colony*.

FEIJOO's numerous references throughout her brief to a statement allegedly made by GEICO referencing the defense of the case as a "slam dunk" is also a blatant misrepresentation. In truth, this statement was not made by GEICO, and this in no way represents GEICO's assessment of the case. Rather, this was a statement made by Ryan Penta, Esq., the staff counsel appointed to represent Garcia, and this statement was made by Mr. Penta in his capacity as Garcia's attorney in the underlying action. [*See* Doc. 42-2 at 17:18-23; 29: 1-5]. In essence, FEIJOO attempts to impute the communications of Mr. Penta to GEICO in order to confuse the issues.

Mr. Penta was appointed only to handle the defense of FEIJOO's suit against Garcia. Absent authority to adjust or settle a claim, any communications made by Mr. Penta have no bearing on GEICO's handling of the instant claim. An insurer's duty of good faith does not extend to those individuals appointed to handle the defense of a case. Mr. Penta had his own distinct duty to communicate with his client pursuant to Rule 4-1.4, Florida Rules of Professional Conduct. As such, Mr. Penta's communications or conversations with Garcia regarding his assessment of FEIJOO's lawsuit are no more relevant to a determination of bad faith than communications of independent counsel whom Garcia could have hired for the defense of the underlying action. Any discussions that took place between Mr. Penta and Garcia regarding Mr. Penta's assessments of the claim or defenses are not reflective of GEICO's assessment. Therefore, FEIJOO's repeated references to Mr. Penta's assessment of the defense of the underlying claim as a "slam dunk" is completely irrelevant to a determination of whether GEICO handled FEIJOO's claim in good faith.

Notwithstanding FEIJOO's attempts to isolate and critique aspects of GEICO's communications with Garcia, the record is replete with evidence demonstrating that GEICO fulfilled its duty to communicate with its insured under the totality of the circumstances. Therefore, no reasonable jury could find that there is any "causal connection" between GEICO's communications with its

33

insured and the excess judgment in this case. *See Maldonado v. First Liberty Ins. Corp.*, 546 F.Supp. 1347, 1353 (S.D. Fla. 2008); *Perera v. U.S. Fidelity and Guar. Co.*, 35 So. 3d 893 (Fla. 2010).

## C.  Neither GEICO's Profit-Based Employee Compensation Bonuses nor Average Loss Payment Metrics Bear any Relevance to the Manner in which GEICO Handled FEIJOO's Claim.

FEIJOO's attempt to attribute the inability to reach a settlement of her claim to GEICO's documentation of Average Loss Payments ("ALP") and the profit sharing plan offered to GEICO employees is nothing more than a speculative conspiracy theory meant to divert this Court's attention from the relevant information and documentation GEICO used to evaluate FEIJOO's bodily injury claim. [*See* Brief of Appellant at pp. 27-30]. The district court correctly concluded that "Feijoo's allegations of GEICO's focus on profit-sharing and incentives designed to minimize loss payments are examples of conclusory allegations that are insufficient to withstand a motion for summary judgment. (citation omitted)." [Doc. 113 at p. 16]. FEIJOO's entire argument is unsupported by evidence and fails to lay any foundation that the documentation of ALP bears any notable relation to GEICO's profits to the extent that GEICO's profit sharing program could feasibly incentivize adjusters to under-value claims. FEIJOO has also failed to provide any evidential support that could feasibly draw a correlation between a

34

theoretical company-wide incentive program and the evaluation of FEIJOO's claim in particular.

FEIJOO erroneously attempts to relate the documentation of ALP to an incentive plan for GEICO adjusters in the handling of their claim. Because FEIJOO's argument confuses and obscures the concept and purpose of ALP metrics, it is first necessary to explain what ALP metrics consist of and why this information is tracked by GEICO, as well as other insurance companies.

It should first be noted that ALP only tracks the amount a claim is actually settled for, and it does not factor in the amount of the policy limits, nor does ALP document average settlement offers. Because ALP metrics do not factor in the amount of the policy limits applicable for a settled claim, there would be no feasible way to truly evaluate an individual adjuster based on their respective ALP. For example, a given adjuster who happened to be assigned to a large number of claims with $10,000 policy limits would inevitably have a significantly lower ALP than an adjuster who was assigned a large number of claims with $100,000 policy limits, irrespective of either adjusters' alleged attempts to lower payouts for claims.

FEIJOO also fails to recognize that average loss payment metrics are documented by GEICO in order to comply with administrative regulations and reporting requirements for insurance companies under Florida law. The Department of Financial Services ("DFS") and the Office of Insurance Regulations

("OIR") require every insurance company conducting business in the state of Florida to document and report information necessary for the regulation of insurance. Specifically, Chapter 69O-175.001(4) of the Florida Administrative Code states as follows:

> Each insurer shall determine the expected patterns of loss payments over time associated with a policy of auto insurance written in Florida….The determination shall be made using Florida accident year or policy year **loss payment patterns**, and must fairly represent the auto insurance loss transactions of the insurer.

> Fla. Admin. Code. R. 69O-175.001(4)(emphasis added).

This provision of the Florida Administrative Code requires any insurance company issuing liability auto insurance policies in the state of Florida to use the loss payment patterns documented from the previous year(s) in order to calculate the expected patterns of loss payments. Thus, in order to calculate the "expected patterns of loss payments", it is required that the insurer track "loss payment patterns." Once calculated, the "expected patterns of loss payments" figure is then used to calculate other essential figures such as investment income and the calculation of insurance rates, as required by the OIR. *See id.*

GEICO's documentation of average loss payments is consistent with the requirement that a liability auto insurer in the state of Florida document "loss payment patterns." This is just one example of how GEICO's documentation of ALP is consistent with efficiently and effectively meeting the numerous

36

requirements set forth for insurance companies in Florida. FEIJOO's attempt to misconstrue GEICO's compliance with regulations mandated by the DFS and OIR into evidence of bad faith is nothing more than a smokescreen intended to distract this Court from the actually merits of this case, which mandate summary judgment in GEICO's favor.

Furthermore, ALP metrics bear no relation whatsoever to GEICO's profit-sharing bonuses provided to its employees, and FEIJOO has failed to provide any record evidence that would draw any correlation between the two. All GEICO employees receive profit-sharing bonuses, not just those employees who adjust claims and negotiate settlement, so the contention that the implementation of a profit-sharing program is designed to lower claim payments is unpersuasive.

The lynch-pin of FEIJOO's argument is based on the flawed assumption that reducing ALP by undervaluing claims will increase GEICO's profits. Not only has FEIJOO failed to produce any evidence that would suggest that undervaluing claims would increase profits, but FEIJOO's speculative theory overlooks the fact that a practice of undervaluing claims would inevitably lead to increased expenses resulting from claims not settling. Specifically, when claims do not settle, GEICO must pay all the costs to defend its insureds in the resulting litigation. Furthermore, claims that are undervalued and not settled at the onset require additional adjuster handling and managerial supervision, thus resulting in additional claim adjustment

expenses and the potential need to hire additional adjusters and supervisors. Furthermore, FEIJOO overlooks the additional expenses stemming from extra-contractual claims that would result if GEICO had a system to incentivize adjusters to undervalue claims. Not only must GEICO pay the costs related to its own defense in extra-contractual claims made against the company, but undervaluing claims also raises the potential risk of exposure to judgments against the company that may greatly exceed the contracted policy limits. The costs related to providing a defense to insureds for unsettled claims and defending bad faith claims coupled with the potential for extra-contractual exposure resulting from failing to settle claims would dramatically outweigh any alleged increase in profits that FEIJOO argues GEICO seeks to achieve by incentivizing adjusters to reduce claim payments.

FEIJOO's argument is further undermined by the simple fact that FEIJOO has produced no evidence whatsoever that any alleged incentives or profit-sharing plan had any effect on FEIJOO's claim in the instant matter. There is simply no evidentiary link between FEIJOO's accusations of a conspiracy to incentivize adjusters to lower claim payments and the fact that FEIJOO's bodily injury claim was not ultimately settled. Absent an evidentiary link, FEIJOO's argument is based purely on speculation. The district court correctly concluded that "Feijoo's allegations of GEICO's focus on profit-sharing and incentives designed to

minimize loss payments are examples of conclusory allegations that are insufficient to withstand a motion for summary judgment." [D.E. 113, at p. 16] (citing *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169,1181 (11th Cir. 2005)).

In sum, GEICO is a business with the right and obligation to track payments made in the course of business. Furthermore, the documentation of loss payments is essential for an insurance company to comply with insurance regulations in the state of Florida. Nonetheless, FEIJOO would seek to prejudice GEICO in the eyes of a jury and this Court simply because GEICO tracks this information. FEIJOO also seeks to prejudice GEICO based on a profit-based compensation plan, a common aspect of many modern business models. FEIJOO's allegations of a company-wide "scheme" that purportedly incentivizes adjusters to reject settlement offers based on personal financial motive is tenuous and completely unsubstantiated by the record. Therefore, such allegations bear no relevance whatsoever to an assessment of GEICO's good faith claims handling in the instant case.

**D. The District Court Correctly Granted Summary Judgment Based on the Undisputed Facts Considered Under the Totality of the Circumstances.**

FEIJOO argues that reversal is warranted because the district court considered the evidence "in context" in finding that GEICO upheld its duty of good faith under the totality of the circumstances. [*See* Brief of Appellant at p. 30].

This argument is completely unfounded and in complete contravention to the standard for bad faith under Florida law. The district court correctly dismissed FEIJOO's attempts to isolate GEICO's conduct in an effort to fabricate a claim for bad faith. Furthermore, the district court's consideration of the evidence in the full context of the entirety of GEICO's claim handling under the "totality of the circumstances" is the correct standard under which an insurer's conduct is assessed pursuant to Florida law. *See Berges*, 896 So. 2d 665 (Fla. 2005).

FEIJOO's citation of factually distinguishable 11th Circuit decisions is also unavailing, as these cases offer no analogous circumstances that would mandate reversal of summary judgment in the instant case. [*See* Brief of Appellant at p. 31]. It is particularly noteworthy that not one case cited by FEIJOO consists of circumstances where an insurer made reasonable attempts to settle a claim notwithstanding the fact that the claimant did not sustain any out of pocket expenses, provided testimony that she would not seek any further treatment, and failed to provide objective evidence documenting the existence of a permanent injury. Such circumstances require the entry of summary judgment, because no reasonable juror could find that GEICO acted in bad faith under the totality of the circumstances.

Finally, FEIJOO argues that summary judgment was inappropriate because the district court should have accepted the testimony of Garcia's son regarding his

willingness to contribute funds toward settlement. [*See* Brief of Appellant at p. 32]. However, the willingness of the insured or the insured's son to contribute funds to a settlement offer that is within the policy limits is wholly inapposite to whether GEICO handled FEIJOO's claim in good faith.

As previously discussed at length, *supra*, an insurer has no obligation under Florida law to advise an insured of the opportunity to contribute to settlement offers within the policy limits. By entering into an insurance contract, an insured surrenders all control over the handling of a claim to the liability insurance carrier. The contracted policy limits represent the range of the insurer's authority in settlement negotiations. The implication that an insured must be given an opportunity to contribute to every settlement opportunity within the policy limits would not only impede the insurer's ability to negotiate claims, but it would essentially defeat the purpose of obtaining a specified amount of insurance.

The "uncontroverted testimony" of Garcia's son that FEIJOO refers to is completely distinguishable from the testimony of the claimant's attorney referenced in *Moore*. *See Moore v. GEICO Gen. Ins. Co., No*. 14-13356, 2016 WL 736824 (11th Cir. Feb. 19, 2016). In *Moore*, the testimony that precluded summary judgment was that of the claimant's attorney who had the ability and authority to settle the claim. *See id.* In contrast, here, the testimony of the insured's son, Jose

Jr., who had no right or authority to contribute to settlement is irrelevant to GEICO's claim handling, even when accepted as true.

**E.    The District Court Applied the Correct Standards in Granting Summary Judgment in GEICO's Favor.**

FEIJOO erroneously contends that the district court "departed from Florida law in describing an insurer's duty to settle claims against its insured" and thus held GEICO "to a lesser standard of care." [*See* Brief of Appellant at p. 32-33]. FEIJOO also claims that "the district court held Feijoo to a higher standard of proof" in granting summary judgment in GEICO's favor. [*See id.* at p. 34]. However, a thorough review of well-settled Florida law and bad faith jurisprudence along with the district court's Order makes abundantly clear that the district court applied the correct standards in granting GEICO's Motion for Summary Judgment.

Specifically, FEIJOO argues that "Florida's federal courts have inadvertently propagated dicta" and that "the district court relied on two of these incorrect statements of Florida law." [*See id.* at p. 33]. First, FEIJOO erroneously concludes that the district court erred by referencing this Court's opinion in *Novoa v. GEICO Indem. Co.*, 542 Fed. Appx. 794, 796 (11th Cir. 2013). In *Novoa*, this Court stated that "[t]he duty of good faith does not require an insurer to act 'prudently, perfectly, or even reasonably. Rather insurers must refrain from acting solely on the basis of their own interests in settlement.'" *Id.* (citing *State Farm*

*Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995). Apparently, FEIJOO's position is that the Eleventh Circuit has misunderstood and misapplied Florida law as defined by the Florida Supreme Court pertaining to bad faith twice in the previous two (2) years. *See Messinese v. USAA Cas. Ins*. Co., 2015 4619808, at *3 (11th Cir. Aug. 4, 2015).

The principles set forth in *Novoa* are well-settled in the jurisprudence of Florida bad faith law. To begin with, the standard set forth in *Novoa* is a direct quote taken from the Florida Supreme Court's opinion in *Laforet.* 658 So. 2d at 58 (Fla. 1995). In *Laforet*, the court discussed the evolution of bad faith law in Florida, arriving at the point in which "courts began to recognize that insurers owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement." *Id.* It is here that the Florida Supreme Court acknowledged an insurer's fiduciary duty to "refrain from acting solely on the basis of their own interests in settlement," which gave rise to the concept of insurer good faith. *Id*.; *see also Tanaka v. GEICO General Ins. Co*., 2013 WL 3323242, *2 (M.D. Fla. 2013). This standard of bad faith is consistent with the well-settled principle established by the Florida Supreme Court that bad faith requires conduct that amounts to more than mere negligence. *See Campbell v. Government Employees Ins.* Co., 306 So. 2d 525, 530 (Fla. 1974). Thus, while we know from *Campbell* that negligence alone is not sufficient to rise to the level of bad faith, the Florida

Supreme Court has further established that the level of misconduct required to rise to the level of bad faith consists of conduct where an insurance company has placed its own interests ahead of those of the insured. *See State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995); *see also Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1125 (Fla. 2005).

Since the Florida Supreme Court's decision in *Laforet*, numerous Florida and federal courts have recognized that the insurer's duty of good faith requires that an insurer "owed a duty to their insureds to refrain from acting solely in the insurers' own interest in settlement." *See QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc*., 94 So. 3d 541, 545 (Fla. 2012); *see Ruiz, 899 So. 2d at 1125* (Fla. 2005); *see Kincaid v. Allstate Property & Cas. Ins. Co*., 2014 WL 2048281, *4 (S.D. Fla. 2014); *see Maldonado v. Liberty Ins. Corp*., 546 F.Supp.2d 1347, 1353 (S.D. Fla. 2008), aff'd 342 Fed.Appx. 485 (11th Cir. 2009); *Miami Battery Mfg. Co. v. Boston Old Colony Ins. Co*., 1999 WL 34583205, *9 (S.D. Fla. 1999)("the insurance company owes a duty to refrain from acting solely in the insurance company's own interests–to 'exercise good faith' and undertake 'the avoidance of bad faith.'")(quoting *Laforet*, 658 So. 2d at 58 (Fla. 1995)(citations omitted)). Nonetheless, FEIJOO takes the position that federal and Florida courts have routinely misapplied Florida law in relying on the Florida Supreme Court's decision in *Laforet*.

Recently, the Eleventh Circuit reaffirmed the standard set forth in *Laforet*. In *Messinese v. USAA Cas. Ins. Co*., 2015 4619808, at *3 (11th Cir. Aug. 4, 2015), this Court affirmed the district court's decision to deny the Messineses' motion for reconsideration on the district court's order granting the insurer's motion for summary judgment, as "the Messineses failed to demonstrate that USAA's alleged bad faith resulted in the failure of settlement talks and the subsequent excess judgment." *Id.* In addressing the standard for bad faith under Florida law, the court specifically stated that "to fulfill the duty of good faith, an insurer does not have to act perfectly, prudently, or even reasonably. Rather, insurers must 'refrain from acting solely on the basis of their own interests in settlement.'" *Id.* (quoting *Laforet*, 658 So. 2d at 58 (Fla. 1995)).

Furthermore, FEIJOO's contention that the district court "departed from Florida law" by referencing the language in *Novoa* and *Laforet* is unavailing, as the district court did not solely rely on this language in finding that GEICO upheld its duty of good faith, as the district court thoroughly discussed the pertinent law controlling bad faith under Florida law. [D.E. 113, at pp. 9-11]. Moreover, the district court need not rely on the holding in *Laforet* to establish that GEICO upheld its duty of good faith, as GEICO's diligent investigation of FEIJOO's claim and its good faith attempts to negotiate a settlement of her claim epitomize good faith conduct on the part of an insurer. Specifically, the district court found that

"the totality of the circumstances demonstrates that GEICO diligently pursued a reasonable settlement, advised Garcia of the risks of an excess judgment, or settlement opportunities with FEIJOO, and the probable outcome of the litigation." [D.E. 113 at 16].

FEIJOO also argues that "the district court held Feijoo to a higher standard of proof" based on the district courts citation of *Francois v. Illinois Nat. Ins. Co.*, Case No. 01-CV-8070, 2002 WL 33760405, *4 (S.D. Fla. Mar. 28, 2002). [*See* Brief of Appellant at p. 34-35]. Specifically, FEIJOO claims the Court's statement that "there is no record evidence showing that GEICO exhibited a 'conscious disregard or indifference to the rights of the insured" suggests that "GEICO was held to a lesser standard of care than required." [*See id.* at p. 35]. *Francois* does not purport to give a direct quote from *Shaw*; rather, the court in *Francoi*s paraphrases a summation of the court's analysis in *Shaw*. This statement is consistent with the well-settled standard for bad faith under Florida law which instructs that an insurance company has a good faith duty to consider the interests of its insured and refrain from acting on the basis of its own interests, as discussed *supra*.

Further, the district court's Order did not require that FEIJOO should have provided evidence that GEICO exhibited a conscious disregard or indifference to the rights of the insured as FEIJOO asserts. Rather, the district court specifically concluded that "the totality of the circumstances demonstrates that GEICO

diligently pursued a reasonable settlement, advised Garcia of the risks of an excess judgment, of settlement opportunities with Feijoo, and the probable outcome of the litigation." [D.E. 113 at p. 16]. Thus, the district court's grant of summary judgment was based on the record evidence which demonstrated that at no time did GEICO fail to take the interests of its insured, Garcia, into account throughout the handling of FEIJOO's claim.

FEIJOO also erroneously argues that the district court's grant of summary judgment was "based on Justice Wells' dissent" in *Berges v. Infinity Ins. Co*., 896 So. 2d 665 (Fla. 2004). [*See* Brief of Appellant at p. 35]. The assertion that the district court's basis for granting GEICO's Motion for Summary Judgment was in any way based on the dissenting opinion in *Berges* is completely lacking in merit. The Court did not rely on the *Berges* dissent as a statement of Florida law; rather, the district court merely referenced the dissenting opinion in a footnote. [*See* D.E. 113 at p. 15 n. 6]. Likewise, the district court's citation of *Moore v. GEICO Gen. Ins. Co*., No. 8:13-cv-1569-T-24 AE, 2014 WL 2938430 (M.D. Fla. 2014) was also merely referenced in the same footnote. [*See* D.E. 113 at p. 15 n. 6]. This footnote is clearly distinct from the section of the Court's Order explicitly titled "Applicable Law", wherein the district court sets forth the law on which it relied in granting GEICO's Motion for Summary Judgment. [D.E. 113, at pp. 9-11]. Therefore, there

is no basis on which to assert that the district court misinterpreted or misapplied the correct standard for bad faith under Florida law in granting summary judgment.

## **CONCLUSION**

The district court correctly concluded that GEICO was entitled to summary judgment in the instant action. GEICO not only promptly investigated the claim brought by FEIJOO, but GEICO consistently kept its insured informed throughout the handling of the claim. Furthermore, notwithstanding the fact that FEIJOO admitted that she did not sustain any out of pocket expenses and would not seek any further treatment, GEICO diligently made reasonable settlement offers in a good faith attempt to settle FEIJOO's bodily injury claim. Based on the foregoing, it is clear that GEICO did not act solely on the basis of its own interest in its handling of FEIJOO's claim, and GEICO upheld its duty of good faith owed to its insured. Therefore, summary judgment was appropriately entered in favor of GEICO, as no reasonable jury could find that GEICO acted in bad faith.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 11,606 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure

32(a)(7)(B)(iii).

<div style="margin-left:40%;">

**s/ADAM A. DUKE**
_____
**B. RICHARD YOUNG**
Florida Bar No.: 442682
ryoung@flalawyer.net
**ADAM A. DUKE**
Florida Bar No.: 0055734
aduke@flalawyer.net
Young, Bill, Boles, Palmer & Duke, P.A.
P.O. Drawer 1070
Pensacola, FL 32591-1070
(850) 432-2222 / 432-1444 - facsimile
Attorneys for GEICO General Insurance Company

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of June, 2016, a true and correct copy of the foregoing document has been filed via this Court's Electronic Case Files (ECF) system; and a copy served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by this Court's ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

**s/ ADAM A. DUKE**
**B. RICHARD YOUNG**
Florida Bar No.: 442682
ryoung@flalawyer.net
**ADAM A. DUKE**
Florida Bar. No.: 0055734
aduke@flalawyer.net
Young, Bill, Boles, Palmer & Duke, P.A.
P.O. Drawer 1070
Pensacola, FL 32591-1070
(850) 432-2222 / 432-1444 - facsimile
Attorneys for GEICO General Insurance Company

## SERVICE LIST
*Feijoo v. GEICO*
CASE NO.: 15-14947-B

| | |
|---|---|
| **Stephen A. Marino, Jr.**<br>smarino@vpl-law.com<br>**Danya J. Pincavage**<br>dpincavage@vpl-law.com<br>**Michal Meiler**<br>mmeiler@vpl-law.com<br>VER PLOEG & LUMPKIN, P.A.<br>100 S.E. Second Street, 30th Floor<br>Miami, FL 33131<br>305-577-3996<br>305-577-3558 *facsimile*<br>*Counsel for Norma Ines Feijoo* | |